UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA ROWE,

    Plaintiff,

v.

DENIS McDonough,

    Defendant.
_____/

Case No. 22-11768

HON. DENISE PAGE HOOD

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15)
and
DENYING PLAINTIFF'S MOTION
FOR LEAVE TO FILE SUR-REPLY (ECF No. 18)**

**I.    BACKGROUND**

On August 1, 2022, Plaintiff Tonya Rowe filed the instant suit against Defendant Denis McDonough, Secretary of Veterans Affairs alleging two counts: Disability Discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq*. (Count 1) and Retaliation, in violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq*. (Count 2). (ECF No. 1)

Effective November 12, 2019, Rowe was hired as a Secretary (OA) with the Veterans Health Administration, Patient Care, in Ann Arbor, Michigan. (ECF No. 16, PageID.416) The appointment was for two years, which could be converted to a career appointment upon satisfactory performance. *Id*. Rowe indicated in her

application that she qualified for Schedule A Disability appointment and included medical documentation with her employment. (ECF No. 15, PageID.174, .177) She is a person with disabilities, and she suffers from major depressive disorder, anxiety, and PTSD for which she receives ongoing medical care to this day. (*Id*. at PageID.153)

Rowe's initial duties consisted of "basically administrative functions" such as "answering phones and working on new employee sponsorships and access." (*Id*. at PageID.128, .99) Supervisor Joyce Oberg explained at first that she would be "answering the telephones, doing any memos that they had" but later she may be assigned to data entry functions: "travel … or timekeeping." (*Id*. at PageID.130) Rowe performed administrative tasks data entry, with no greeting or screening visitors for the first several months. (*Id*.) In February of 2020, timekeeping and travel data entry was added. (*Id.* at PageID.99, .133) In March of 2020, Rowe was assigned to perform limited COVID 19 screening three times a day, 45 minutes to an hour at a time, to relieve the person who was assigned to the task primarily "for two breaks and lunch." (*Id.* at PageID.133) Rowe asserts this was the only time she was ever required to perform any sort of "greeting" or "screening" function.

Rowe claims that she began experiencing significant interpersonal conflict

2

with another newly hired secretary under Oberg's management named Samantha Bailey. (*Id*. at PageID.135) She further claims that Bailey would frequently criticize Plaintiff in the performance of Rowe's job duties, which Rowe found distressing. Rowe made a formal complaint to Oberg on April 20, 2020. She claims that despite numerous complaints about Bailey's harassment, Oberg "totally ignored it" and "[i]t happened all the way until the end because Joyce never stopped it." (*Id*. at PageID.135)

On May 13, 2020, Oberg called Rowe into her office. Rowe claims that Oberg began yelling at her that she was doing everything wrong, particularly with respect to timekeeping and data entry. (*Id*. at PageID.138) Oberg later emailed Rowe on May 15, 2020 setting forth the problems with Oberg's timekeeping. Rowe asserts she was completely taken aback by this because it had only been barely two months when she was assigned to timekeeping and travel entry and that she had received no negative feedback prior to this date. (*Id*.) Rowe then realized she needed additional support to perform the essential timekeeping functions of her position and proceeded to seek disability accommodations. (*Id*. at PageID.139)

On May 20, 2020, Rowe emailed the Ann Arbor VA's Reasonable Accommodation (RA) Coordinator Thomas Mardeusz on May 20 regarding "a request for accommodations, due to [her] disability." (*Id* at Page ID.251-.256)

3

Rowe requested (1) additional training for her job duties, specifically timekeeping and travel, (2) monthly mediated progress reports to show progress after completing training, (3) to be relocated away from her coworker if mediation was unsuccessful or offered telework, and (4) reassignment. Rowe attached her Schedule A Letter as support for her disability and included a letter about the Bailey issues. She did not identify her disability. (*Id*.) Mardeusz and Rowe went back and forth regarding the language of her request. Rowe's husband, Glenn Rowe, began communicating with Mardeusz on Rowe's behalf. (*Id*. at PageID.272) After speaking with Mardeusz, Rowe's husband submitted a final RA request on Rowe's behalf on May 21, 2020 for the following accommodations to relocate her desk due to external noise and distractions since her desk is right by the door and elevator, which impacted her ability to perform her job functions due to her ability. (*Id*. at PageID.276-.279)

On June 1, 2020, Oberg and Mardeusz met with Rose to discuss the RA request. Rowe requested training from payroll to which Oberg agreed. As to Rowe's relocation request, it was discussed that visitor screening duties were an essential function of her position. A possible alternative was discussed, such as noise canceling headphones, but no conclusion was reached during the meeting. (*Id*. at PageID.282) Oberg contacted the Chief of Finance to request a one-on-one

4

timekeeping training for Rowe. With travel restrictions due to COVID, a one-on-one Skype training was proposed with the Acting Payroll Supervisor agreed to by Rowe. (*Id*. at PageID.285) The Skype training occurred on June 10, 2020 which was also attended by Oberg and Sharon Roberts, a timekeeper and analyst working under Oberg. (*Id*. at PageID.242-.246, 288-.289) Another training was held on June 23, 2020, which involved watching training videos on YouTube that Payroll provided to Rowe. (*Id*. at PageID.297)

Even though Rowe's request to move her desk was not granted due to her screening duties, Oberg decided to offer Rowe on June 4, 2020, a temporary relocation given the limited foot traffic at the time, which Rowe initially accepted. (*Id*. at PageID.236) Rowe ultimately decided not to relocate because the relocation was not being offered as part of her RA request. (*Id*. at PageID.145) Oberg provided Rowe with a white noise machine to help with Rowe's concentration limitation. (*Id*. at PageID.355-.356) On June 16, 2020, Oberg provided Rowe an RA Determination that the accommodations offered were: additional timekeeping training as Rowe had requested and the alternative accommodation of a white noise machine instead of the desk relocation. (*Id*. at .358-.359) Rowe did not accept the alternative accommodation of white noise machine on June 24, 2020. (*Id* at PageID.306)

5

Problems continued after the RA Determination. As to the Rowe and Bailey issues, Oberg separated the two, but Oberg found no conclusive evidence that Rowe was being harassed by Bailey. (*Id*. at PageID.240) Oberg believed it was Rowe who harassed Bailey. (*Id*.)

Regarding the travel data entry task, a doctor informed Oberg that he was frustrated with Rowe as to his travel vouchers and scheduling meetings. He asked Oberg to reassign his tasks to Bailey, whose work was reliable and error-free. (*Id*. at PageID. 309) The timekeeping issues continued, in that Rowe had to ask Roberts questions about timekeeping daily, and that every pay period, Roberts had to review the leave requests with Rowe to ensure the time was submitted correctly. (*Id*. at PageID.349, .354)

Rowe filed a complaint with the VA's Equal Employment Office (EEO) on June 19, 2020, alleging harassment based on her disability, religion and reprisal, which was amended following her termination. (*Id*. at PageID.330, .331-.333) Oberg became aware of Rowe's formal EEO charge on July 8, 2020 by an email sent at 10:06 a.m. (ECF No. 16, PageID.441-.442) At 1:17 p.m. that same day, Oberg sent an email to Ian Wong, a Human Resources Representative, requesting a sample probationary warning letter for Rowe. (*Id*. at PageID.439) On July 20, 2020, Oberg forwarded a proposed Probationary Warning Letter for Plaintiff to

Wong. (*Id*. at PageID.443-.447) The proposed Probationary Warning Letter was reviewed by Eric Lee, Lead HR Specialist. (*Id*. at PageID.471) On July 30, 2020, Oberg emailed Wong indicating that in her opinion, Rowe's repeated errors have been egregious enough to warrant separation during the probation period, instead of issuing a probationary warning letter. (*Id*. at PageID.448-.450)

On August 18, 2020, Oberg emailed Human Resources regarding Rowe's performance issues, proposing to terminate Rowe because of the ongoing issues. (ECF No. 15, PageID.315-.320) HR thereafter supported Oberg's proposal to terminate Rowe. On August 26, 2020, Acting Senior Strategic Business Partner Jerald Rushing issued Rowe a Notice of Termination. (*Id*. at PageID.321-.323) The Notice indicated Rowe was subject to a trial period for the first two years of employment and that she was being terminated for failure to qualify during her trial period due to her performance. (*Id*.)

This matter is now before the Court on McDonough's Motion for Summary Judgment. Responses and reply briefs have been filed. A hearing was held on the matter. Also before the Court is Rowe's Motion for Leave to File a Sur-Reply Brief.

## II. ANALYSIS

### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Failure to Accommodate under the Rehabilitation Act

Courts must apply the same standards to Rehabilitation Act discrimination claims as those applied to claims under the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 794(d); *see also Burns v. City of Columbus*, 91 F.3d 836, 842 (6th Cir. 1996) ("By statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination" (citing 29 U.S.C. § 794(d))). The Rehabilitation Act, a parallel statute of the ADA, prohibits federal agencies from discriminating against any qualified individual with a disability. 29 U.S.C. § 794(a); *see also Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314 (6th Cir. 2012) ("the Rehabilitation Act and the ADA serve the same goals, seeking to eliminate disability-based discrimination and other barriers to employment and public services for individuals with disabilities."). Claims under the Rehabilitation Act are reviewed under the same standard as ADA claims. *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013).

To establish a prima facie case of failure to accommodate, an employee must

show: "(1) [she] is disabled within the meaning of the ADA; (2) [she] is otherwise qualified for the position, such that [she] can perform the essential functions of the job with or without a reasonable accommodation; (3) the employer knew or had reason to know of [her] disability; (4) the employee requested an accommodation; and (5) the employer failed to provide a reasonable accommodation thereafter." *Green v. BakeMark USA*, LLC, 683 F. App'x 486, 491 (6th Cir. 2017) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011)). Under both the ADA and the Rehabilitation Act, "[f]ailure to provide a reasonable accommodation to a disabled, but otherwise qualified, person is unlawful discrimination." *Saroki-Keller v. Univ. of Michigan*, 568 F. Supp. 3d 860, 865 (E.D. Mich. 2021) (citing *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) ("The ADA forbids 'discriminat[ion] against a qualified individual on the basis of disability' as it applies to hiring and firing ... Prohibited discrimination also includes 'not making reasonable accommodations.'")). In order to determine whether a specific duty is an "essential function of the job," courts may look to the factors provided by ADA regulations, including "the employer's judgment as to which functions are essential; written job descriptions; the amount of time spent on the job performing the function; the consequences of not requiring the incumbent to perform the function; the work experience of past incumbents in the job; and the

current work experience of incumbents in similar jobs." *Saroki-Keller*, 568 F. Supp. 3d at 865-66 (citing 29 C.F.R. § 1630.2(n)(3); *Green*, 683 F. App'x at 492). If plaintiff claims she is unable to perform and essential function without an accommodation, she must show that (1) she proposed an accommodation, (2) the accommodation was reasonable, and (3) she was "capable of performing the essential functions of the job with the proposed accommodation." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). Once an employee establishes a prima facie case of failure to accommodate, "the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Id*.

There is no genuine issue of material fact that Rowe has met factors one (she is disabled), three (the employer knew she was disabled) and four (she requested accommodations). McDonough argues that Rowe is unable to meet the second factor, that she is otherwise qualified for the position, with or without accommodation. As a secretary, McDonough claims that Rowe's essential functions included timekeeping, which Rowe admits she had difficulty performing due to her disability. The submission of time and attendance records is expressly listed as a responsibility and duty in the Position Description. (ECF No. 15, PageID.201-.202) Rowe requested additional timekeeping training, in an agreeable

11

format, such as one on one, because she claimed her initial training lacked audio and she had work responsibility distractions. Rowe was provided with individualized training with a payroll expert on June 10, 2020, another individualized training on June 12, 2020, and made available a white noise machine at her desk. *Id*. at PageID.355, .358. Rowe's timekeeping issues continued, even after the additional training.

Rowe proposed a second accommodation to relocate her desk because she was unable to concentrate to a space where she did not have to screen and greet visitors. McDonough argues that screening and greeting visitors were essential functions of the position. Screening visitors and callers in order to direct inquiries to the proper person or to respond personally to non-technical questions when appropriate is listed as a responsibility and duty in the Position Description. *Id.* at PageID.201-.202. Rowe was told that one of the major responsibilities of a secretary was to greet visitors and guests to the service. *Id*. at PageID.359. Rowe responds that the screening responsibility was not listed in the job posting notice. However, the Sixth Circuit has held that against the job posting, the written job description controls. *Keith*, 703 F.3d at 925.

Rowe also indicates that the screening duty could have been assigned to another secretary in order to accommodate Rowe. She initially did not perform

12

the screening tasks, and was only assigned to screen as relief for the employee primarily assigned to the task after COVID-19 began. However, McDonough argues that the secretary position required in person presence, an essential function, so moving Rowe to another place was not a reasonable request. *Id.* at PageID.301.

Rowe further argues that the VA failed to act in good faith in the interactive process. The VA failed her request to work from home as a reasonable accommodation, citing *EEOC v. Ford*, 752 F.3d 634, 641 (6th Cir. 2014). However, that opinion was vacated *en banc* in *EEOC v. Ford*, 782 F.3d 753 (2015). The Sixth Circuit rejected the argument that the request to work from home as an accommodation is reasonable where an employee's essential functions necessitate in person attendance. *Id*. at 762-63.

Based on the record submitted by the parties, McDonough has established that timekeeping and greeting and screening visitors are essential functions of a secretary at the department where Rowe was employed. The VA gave Rowe extra training sessions on how perform the timekeeping function, which Rowe acknowledged she received. She was also given a white noise box in order for Rowe to concentrate better. Rowe is unable to rebut that in light of the extra training sessions given, she indicated to Oberg that it was very helpful in

13

performing the timekeeping function which was essential to her job as a secretary. Rowe is unable to also rebut that greeting and screening visitors to her department was not an essential function of her job. Moving her to a space which would not allow her to greet and screen visitors was not a reasonable accommodation for such an essential function of her job. Also, the request to telework was not a reasonable accommodation in light of the in-person requirement of the secretary position to greet and screen visitors. Rowe cannot meet the prima facie case of a failure to accommodate claim under the Rehabilitation Act.

### C. Discrimination under the Rehabilitation Act

To establish a prima facie case of discrimination based on disability under the Rehabilitation Act, a plaintiff must show (1) that she is disabled, (2) that she is otherwise qualified for the job, with or without reasonable accommodation, (3) that she suffered an adverse employment action, (4) that her employer knew or had reason to know of the disability, and (5) that, following the adverse employment action, either she was replaced by a nondisabled person or her position remained open." *Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, 42 F.4th 568, 578 (6th Cir. 2022) (citing, *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007)). A federal employee plaintiff bringing the suit under § 501 of the Rehabilitation Act must show that she would not have been subject to the adverse action but for the

14

discrimination. *Bledsoe*, 42 F.4th at 580. A plaintiff may use either direct or indirect evidence. *Id.* "Direct evidence" is evidence that proves the existence of a fact without requiring any inference. *Id.* If a plaintiff presents indirect evidence, the *McDonnell Douglas* burden-shifting framework governs. *Id.* at 581. Under this burden-shifting framework, if a plaintiff presents sufficient evidence of a prima facie case of discrimination, an employer must offer a nondiscriminatory reason for the adverse action. The plaintiff must then demonstrate that the employer's reason is a pretext for discrimination. *Id.* To demonstrate pretext, the plaintiff must show that the reason (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) w[ere] insufficient to warrant the adverse action. *Id.*

Rowe asserts she does not have to engage in the McDonnell Douglas burden shifting framework based on Oberg's email which shows open animosity towards Rose. Oberg indicated that "we have expended too much energy" on this employee, which referred to Rowe's accommodations requests and additional training. However, this statement does not refer to Rowe's disability, but as to responses to Rowe's mistakes in timekeeping, travel, email creation, entry access and teamwork. (ECF No. 16, PageID.469) The email listed the problems with Rowe's work. *Id.* at 469-.471. Rowe's proposed "direct evidence" does not

15

prove discrimination without any further inference because the statement lacks any reference to Rowe's disability as a reason for her termination.

Rowe claims that she is able to demonstrate disability by showing disparate treatment with a nondisabled employee, Sam Bailey, a nondisabled employee person who was hired as a secretary at the time Rowe was hired, who received significantly favorable treatment. Rowe claims that every mistake she made was criticized, but the errors Bailey made with timekeeping, she was not disciplined so harshly. However, Rowe only recalled one incident where she believed Bailey made a timekeeping error and could not recall any other performance issues by Bailey. Only noting one incident does not make Bailey "similarly situated" to Rowe to show Bailey as a comparator. There is no evidence that Bailey performed errors like Rowe to sufficiently establish Bailey as a comparator.

Rowe has not shown the fifth factor for a prima facie case--that, following her termination, either she was replaced by a nondisabled person, or her position remained open. Nothing in Rowe's response addresses this fifth factor.

For the reasons set forth above, Rowe has not carried her burden to establish a prima facie case of discrimination under the Rehabilitation Act due to her disability since she failed to show she was qualified for the position with or without accommodation, failed to identify a comparator or that she was replaced

by a nondisabled person. The discrimination claim must be dismissed.

### D.     Retaliation under the Rehabilitation Act

Retaliation claims established through indirect evidence are also governed by the McDonnell Douglas burden-shifting framework. *Bledsoe*, 42 F.4th at 587. A plaintiff must first establish a prima facie case, showing that she (1) "engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action." *Id*. If the employer offers a non-discriminatory explanation for the adverse action, the burden shifts to the plaintiff to show pretext. *Id*. "To prove a causal connection, [a plaintiff] must produce sufficient evidence from which an inference can be drawn that the [defendant] took the adverse employment action because [the plaintiff]" engaged in protected activity. *Id*. at 588. A plaintiff who shows that the adverse action occurred immediately after the protected activity may be able to rely on temporal proximity alone to overcome a motion for summary judgment. *Id*. Temporal proximity must be "very close," or immediate, such as three weeks or one and a half month between receipt of the charges and adverse action. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 524-25 (6th Cir. 2008). But when "some time

17

elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id*.

      Here, Rowe filed a charge before the EEO on June 18, 2020. Oberg, her supervisor became aware of the charge on July 8, 2020 by way of an email message at 10:06 a.m. A termination letter was presented to Rowe on August 26, 2020. The termination occurred less than two months from when Oberg knew about the EEO charge. Rowe has shown temporal evidence, in addition to other evidence of possible retaliatory conduct, such as Oberg requesting a sample probationary warning letter for Rowe to Ian Wong, a Human Resources representative at 1:17 p.m. on July 8, 2020, three hours after the email message to Oberg regarding the EEO charge. Oberg also sent on July 20, 2020 a proposed Probationary Warning Letter for Rowe to Ian Wong, a Human Resources representative. Oberg sent another email to Wong on July 30, 2020 that in her opinion, Rowe's repeated errors have been egregious enough to warrant a separation during probation, instead of a probationary warning letter. Earl Lee, Lead HR Specialist, emailed on August 5, 2020 as to performance deficiencies in Rowe's file. Oberg emailed Lee on August 16, 2020 outlining all the issues she had with Rowe. Lee emailed Wong and Oberg on August 17, 2020 to move

18

forward with the requested action of termination, without the Probationary Warning Letter. As noted, Rowe was presented with the termination letter on August 26, 2020.

Based on the temporal proximity evidence and evidence of Oberg's subsequent actions to terminate Rowe, there remain genuine issues of material fact that there is a causal connection between the protected activity of filing an EEO charge and Rowe's termination. The retaliation claim remains.

### E. Hostile Work Environment

McDonough argues that if Rowe was claiming a hostile work environment claim, that claim must also be dismissed. Rowe did not address this claim in her response. It is noted that the Complaint does not expressly raise a hostile work environment claim. If Rowe is asserting a hostile work environment claim, any argument on that claim is considered waived since it is not addressed in Rowe's response brief, nor in the Complaint.

### III. CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion for Summary Judgment **(ECF No. 15)** is GRANTED IN PART and DENIED IN PART. The failure to accommodate and discrimination claims under the Rehabilitation Act are dismissed

in Count I are DISMISSED.   The retaliation claim in Count II remains.

IT IS FURTHER ORDERED that Plaintiff's Motion to file a Sur-Reply brief **(ECF No. 18)** is DENIED in that no new evidence was submitted by Defendant in its reply brief because such was produced to Rowe during discovery. Defendant was replying to Plaintiff's arguments in her response brief.

DATED:   September 30, 2024

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge